UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA ELIZABETH BONEZZI,<br><br>Plaintiff,<br><br>v.<br><br>ULTA SALON, COSMETICS & FRAGRANCE, INC., et al.,<br><br>Defendants. | Case No. 24-cv-06916-JST<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>Re: ECF No. 17 |

Before the Court is Plaintiff Maria Elizabeth Bonezzi's motion to remand this action to state court. ECF No. 17. The Court will deny the motion.

## I.   BACKGROUND

Bonezzi brings a class action lawsuit on behalf of herself and similarly situated individuals who worked as non-exempt hourly employees for Defendant Ulta Salon, Cosmetics & Fragrance, Inc. ("Ulta")[1] in California during the four years preceding the filing of the complaint on August 30, 2024. *See* ECF No. 1-1 at 7–37 ("Compl."). Bonezzi alleges that she and other Class Members suffered violations from Defendants' failure to pay all wages owed, failure to pay minimum and overtime wages, failure to pay for all hours worked, failure to furnish accurate wage statements, failure to pay final wages, failure to maintain accurate records, and failure to reimburse necessary business expenses. *Id.* ¶ 13. Specifically, Bonezzi alleges that employees were often required to perform pre- and post-shift off-the-clock work, such as waiting outside for store access, undergoing bag checks after clocking out, and waiting for store closure procedures, without proper compensation. *Id.* ¶ 14. Due to these policies, Bonezzi alleges that she and other

---

[1] Tiffany Tucker is also alleged to be a managing agent of Ulta and named as a defendant (together with Ulta, "Defendants").

Class Members suffered "systematic underpayment" of wages and are entitled to recover unpaid wages, waiting time penalties, and other statutory damages. *Id.* ¶¶ 15–26.

Bonezzi filed the complaint in Marin County Superior Court on August 30, 2024, asserting claims that Defendants: (1) failed to pay minimum wages; (2) failed to pay all overtime wages; (3) failed to provide proper meal periods; (4) failed to provide proper rest periods; (5) failed to provide accurate itemized wage statements; (6) failed to pay timely final wages; (7) failed to pay timely wages during employment; (8) failed to keep accurate payroll records; (9) failed to reimburse necessary business expenses; and (10) violated California's Unfair Competition Law, California Business and Professions Code § 17200 *et seq*. *See* Compl. Defendants then filed a notice of removal to the Northern District of California on October 2, 2024, asserting federal jurisdiction under the Class Action Fairness Act of 2005 pursuant to 28 U.S.C. §§ 1332(c), 1332(d)(2), 1441(a), 1446, and 1453. ECF No. 1.

## II.     LEGAL STANDARD

"[A]ny civil action brought in a [s]tate court of which the district courts of the United States have original jurisdiction, may be removed by a defendant . . . to [a] federal district court." 28 U.S.C. § 1441(a).

CAFA "gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 at 84–85 (2014) (citing § 1332(d)(2), (5)(B)). In a CAFA case, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89. If, however, "a defendant's assertion of the amount in controversy is challenged," then "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (quoting *Dart Cherokee*, 574 U.S. at 82). The parties may rely on "evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Id.* at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins.*

2

1  *Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). CAFA thus requires a court to determine the amount in
2  controversy based on "consideration of real evidence and the reality of what is at stake in the
3  litigation, using reasonable assumptions underlying the defendant's theory of damages exposure."
4  *Id.* at 1198. Accordingly, "when the defendant relies on a chain of reasoning that includes
5  assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions
6  must be reasonable ones." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015).
7  "Under the preponderance of the evidence standard, if the evidence submitted by both sides is
8  balanced, in equipoise, the scales tip against federal-court jurisdiction." *Ibarra*, 775 F.3d at 1199.
9        While a defendant bears the burden of demonstrating that CAFA's amount-in-controversy
10 requirement is met, no additional presumption against removal jurisdiction applies in CAFA cases.
11 *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015) ("Congress and the
12 Supreme Court have instructed us to interpret CAFA's provisions under section 1332 broadly in
13 favor of removal."); *see also Dart Cherokee*, 574 U.S. at 89.

**III.    DISCUSSION**

15       As relevant here, Bonezzi argues that this case should be remanded because (1) Defendants
16 have not provided sufficient evidence to support their calculation of the amount in controversy,
17 and (2) Defendants' assumed rates of violation are unreasonable and not supported by any
18 evidence. ECF No. 17 at 8–12.
19       Here, Bonezzi's complaint does not pray for damages in a specific amount. *See* Compl.
20 Defendants' notice of removal calculates the amount in controversy as follows:

|  |  |
|---|---|
| Meal Period Premiums: | $425,113.60 |
| Rest Break Premiums: | $425,113.60 |
| Wage Statement Damages: | $1,130,500 |
| Waiting Time Penalties: | $55,976,659.20 |

25 ECF No. 1 ¶ 67; In total, Defendants assert $57,957,386.40 in controversy through their notice of
26 removal. *Id.*
27       In their opposition to Bonezzi's motion to remand, Defendants also calculate the following
28 amount in controversy for three of Bonezzi's claims:

1                  Minimum/Overtime Wages:   $2,125,568

2                  Timely Wages Damages:    $2,355,200

3                  Attorneys' Fees:           $1,120,192

ECF No. 20 at 21–22. To the extent the Defendants opposition contains new facts or calculations, the Court treats them "as an amendment to [their] notice of removal." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.1 (9th Cir. 2002); *see also Williams v. ETC Inst.*, No. 18-cv-01011-MEJ, 2018 WL 3105117, at *9 n.9 (N.D. Cal. June 25, 2018).

### A. Sufficiency of Evidence

To support their Notice of Removal, Defendants submitted the declaration of Devon Byrne, the Vice President People Enablement for Defendant Ulta. *See* ECF No. 1-4. Byrne declares that in her position, she has access to "employment records and personnel-related information for Plaintiff Maria Bonezzi . . . and other current and former employees of Ulta." ECF No. 1-4 ¶ 3. "These records include, but are not limited to, payroll records, employment/personnel files, and other records maintained in Ulta's Human Resources System," and which "are kept and maintained by Ulta in the ordinary course of business under [her] direction and control." *Id.* In preparing the declaration, Byrne reviewed "relevant personnel files and employment records for Plaintiff and the employees that Plaintiff seeks to represent in this action." *Id.* ¶ 4. Byrne declares that through her review of the relevant records, Ulta employed approximately 23,552 Potential Class Members between August 30, 2020 and September 12, 2024 and that the average hourly rate of the Potential Class Members was $18.05. *Id.* ¶ 10. She also declares that "approximately 13,221 nonexempt employees in California ended their employment at Ulta" between August 30, 2021 to the present, with those members having an average hourly rate of $17.64, during this three-year period. *Id.* ¶ 12.

Bonezzi argues that the Court should reject Defendants' calculation for the amount in controversy because Defendants have only produced a declaration as evidence. *See* ECF No. 17 at 13. Bonezzi further argues that Defendants' declaration is insufficient because it only speaks vaguely about employment records and employment files without "identifying any specifics as to what such data might encompass, where it was obtained, or why the Court should consider it

trustworthy or authentic" to create a proper foundation for that evidence. *Id.* at 14. Bonezzi's argument is unavailing.

As Defendants note, they are "not required to comb through [their] records to identify and calculate the exact frequency of violations." ECF No. 20 at 13–14 (quoting *Thomas v. Fastaff, LLC*, 2022 WL 4109450, at * 6 (C.D. Cal. Sept. 8, 2022)). Courts have repeatedly rejected the notion that a removing defendant is required to present the underlying employment data at this stage. *See, e.g.*, *Johnson v. Parsec, Inc.*, 2022 WL 17407960, at *1 (C.D. Cal Dec. 2, 2022) ("[t]he [c]ourt rejects Plaintiffs' suggestion that Defendant was required to produce the excessively voluminous detailed records that [the declarant] has summarized for the purposes of this motion"); *Ramirez v. Volt Mgmt. Corp.*, 2022 WL 986600, at *3 (E.D. Cal. Apr. 1, 2022) ("[D]eclarations are clearly sufficient to show that defendant's assumptions in calculating the amount in controversy in this action are reasonable."). Thus, Defendants' sworn declaration by a knowledgeable representative who has reviewed the pertinent records suffices as the type of evidence they are required to produce in support of their removal. *See Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 991 (9th Cir. 2022) (explaining that the defendant responded with "summary judgment style evidence" to establish the amount in controversy by relying "primarily on the declaration of its senior payroll lead [reviewed] the company's payroll data and Plaintiff's allegations" to come up with an amount in controversy total); *see also Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008) (noting that a removing defendant is not obligated to "research, state, and prove the plaintiff's claims for damages" (quoting *McCraw v. Lyons,* 863 F. Supp. 430, 434 (W.D. Ky. 1994)).

**B.     Wage Statement**

Under California law, if "an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof . . . but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203. Willful violations for unpaid minimum wage, overtime, meal period premium pay, and rest period premium pay can all support waiting time penalties. *See, e.g.*, *Naranjo v. Spectrum Sec. Servs., Inc.*, 13 Cal. 5th 93, 125 (2022) ("Missed-break premium pay is indeed wages subject to

1    the Labor Code's timely payment and reporting requirements, and it can support section 203
2    waiting time penalties and section 226 wage statement penalties where the relevant conditions for
3    imposing penalties are met.").

4       The parties primarily dispute whether Defendants' calculation of the amount-in-
5    controversy for the alleged waiting time penalties is appropriate. Defendants calculate the
6    amount-in-controversy by first defining the three-year limitations period as between August 30,
7    2021 (three years before the complaint was filed on August 30, 2024) and the present, ECF No. 1
8    ¶ 63. Defendants then identify approximately 13,221 potential class members whose employment
9    with Defendant ended during that period. *Id.* ¶ 64. They next multiply the number of potential
10   class members by their average hourly rate of $17.64, by 8 hours a day, and by the maximum 30-
11   day penalty period to arrive at a total of $55,976,659.20. *Id.* ¶ 65 (13,221 x $17.64 x 8 x 30). In
12   doing so, Defendants assume a 100% violation rate—meaning that each member was entitled to
13   the maximum waiting time penalty following termination. However, Defendants also argue that
14   even if they reduced their assumed violation rate to 10%, the waiting time penalties alone—
15   $5,596,819.20—would still satisfy the amount-in-controversy requirement. ECF No. 20 at 20.

16      Bonezzi argues that Defendants has failed to provide a reasonable basis for its assumptions
17   and must provide more concrete evidence, such as a sampling of putative class members' time and
18   wage records, to carry their burden. *See* ECF No. 21 at 12–13. The Ninth Circuit's recent
19   decision in *Perez v. Rose Hills Co.*, 131 F.4th 804 (9th Cir. 2025), however, all but forecloses
20   Bonezzi's argument. In *Perez*, the court vacated a remand order that had imposed precisely the
21   kind of "demanding evidentiary burden" that Bonezzi contends is required here. *Id.* at. 806.
22   There, the district court had faulted the defendant for making assumptions of violation rates based
23   on complaint language that the employer had violated wage laws "at times" and "throughout the
24   statutory period." *Id.* at 806–07. In vacating the remand order, the Ninth Circuit reiterated that a
25   removing defendant "is permitted to rely on 'a chain of reasoning that includes assumptions' to
26   calculate the amount in controversy," and clarified that "while 'those assumptions cannot be
27   pulled from thin air,' they can be 'founded on the allegations of the complaint' and do not
28   necessarily need to be supported by evidence." *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th

Cir. 2025) (first quoting *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019), then quoting *Ibarra*, 775 F.3d at 1199, and last quoting *Arias*, 936 F.3d at 925)). Critically, the "district court's task is simply to determine if the defendant's 'reasoning and underlying assumptions are reasonable.'" *Id.* (quoting *Jauregui*, 28 F.4th at 993). The *Perez* court then explained that it makes sense "to expect a defendant to introduce evidence of" the "number of employees in the class" in a wage-and-hour case because that number "may be most easily determined by examining the defendant's employment records." *Id.* at 808 (citing *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 917 (11th Cir. 2014)). "By contrast, it makes little sense to require a CAFA defendant to introduce evidence of the violation rate—really, the *alleged* violation rate—because the defendant likely believes that the real rate is zero and thus that the evidence does not exist. For that reason, a CAFA defendant can most readily ascertain the violation rate by looking at the plaintiff's complaint." *Id.* (emphasis in original).

Here, Defendants support their assumption of a 100% violation rate by pointing to language in various parts of the complaint, including allegations that (1) Defendants implemented "policies, programs, practices, procedures and protocols," specifically requiring Class Members "to wait outside the store until another employee was present to unlock the door and disarm any alarms," which resulted in pre-shift off-the-clock work and "systematic underpayment of wages to Class Members, or some of them," ECF No. 20 at 18–19 (quoting Compl. ¶¶ 14, 15); and (2) there was class-wide failure to provide meal and rest periods to class members, ECF No. 20 at 19. To be clear, because the willful nonpayment of even a single dollar would give rise to a full waiting time penalty for each day that amount has not been paid following termination, a single wage violation—for example, a nonpayment for a missed meal period—per class member would be sufficient to sustain a 100% violation rate, if that penalty accrued for the full 30-day statutory maximum.

Because Bonezzi's complaint itself alleges that at least "some" Class Members are entitled to the statutory maximum 30-day waiting time penalty, the only question is thus whether it is reasonable to assume at least 10% of Class Members were owed at least some wages for more than 30 days after their separation from employment. *See* Compl. ¶ 90 ("The wages withheld, at

7

times, from these Class Members, or some of them, by Defendants remained due and owing for more than thirty (30) days from the date of separation from employment."). The Court concludes that a 10% violation rate is reasonable based on the language in the complaint alleging "policies, programs, practices, procedures and protocols," that regularly resulted in uncompensated pre-shift off-the-clock work and "systematic underpayment of wages" as well as allegations of widespread meal period and rest break violations. *See Stevenson v. Dollar Tree Stores, Inc.*, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) ("Defendant was reasonable in estimating, based on plaintiff's allegations [that assistant managers "routinely" missed meal periods], that all members of the proposed class—all assistant managers—would have missed a meal period as described in the complaint at least once and were thus entitled to the waiting time penalty."); *Cavada v. Inter-Cont'l Hotels Grp., Inc.*, No. 19cv1675-GPC(BLM), 2019 WL 5677846, at *9 (S.D. Cal. Nov. 1, 2019) ("Because the waiting time penalties are also based on the one missed meal and one missed rest breaks, a 100% violation rate, that each employee suffered at least one violation, is based on a reasonable assumption."); *Gonzalez v. Barnard Construction Co.*, No. 22-cv-00534-AJB-KSC, 2022 WL 17061065, at *3 (S.D. Cal. Nov. 17, 2022) ("[O]ther district courts have concluded that allegations of the willful failure to timely pay final wages . . . were sufficient to support . . . a 100% rate.").

While it "may be true that the phrase 'at times' [or 'some'] could support a lower violation rate as easily as it could support the [10% rate] that [Defendants] assumed . . . that does not automatically render the rate assumed by [Defendants] unreasonable." *Perez*, 131 F.4th at 810. "And if [Bonezzi] believed that some other assumption would have been *more* reasonable, she was free to propose that rate" or use a more specific phrase when drafting the complaint. *Id.*

Accordingly, the Court finds that because even an assumption of a 10% violation rate would satisfy the amount-in-controversy requirement, and Bonezzi has not demonstrated why a 10% violation rate would be unreasonable under the circumstances, Defendants have carried their burden of establishing that the amount-in-controversy exceeds $5 million.

The Court thus does not reach the parties' remaining arguments.

/ / /

**CONCLUSION**

For the reasons set forth above, the Court denies Bonezzi's motion to remand.

**IT IS SO ORDERED.**

Dated: July 22, 2025



_____
JON S. TIGAR
United States District Judge